UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                       **REPORT,**
                                                       **RECOMMENDATION and**

v.                                                      **ORDER**

DANIEL MOLINA-RIOS, and                    15-CR-00122-FPG-JJM
JOSE ANDUJAR,
                                   Defendants.
_____

          Defendants are charged in a one-count Indictment with conspiring to possess and distribute 100 grams or more of a substance containing heroin, in violation of 21 U.S.C. §846. Indictment [1].[1]  This case was referred to me by Hon. Frank P. Geraci for supervision of all pretrial proceedings by Text Order dated June 11, 2015.   Before me are the remaining pretrial motions of defendants Jose Andujar [25] and Daniel Molina-Rios [28], as well as the government's cross-motions for reciprocal discovery.  [34], pp. 43-44; [35], pp. 42-43.[2]  Oral argument was held on February 29 and March 29, 2016 [42, 44].  For the following reasons, the government's cross-motions for reciprocal discovery are granted and defendants' non-dispositive motions are granted in part and denied in part, and I further recommend that defendants' motions to suppress wiretap evidence and statements be denied.

---

[1]       Bracketed references are to the CM/ECF docket entries.

[2]       Defendant Molina-Rios agreed at the February 29, 2016 oral argument that his motion to suppress statements was moot (February 29, 2016 Text Order [43]) and defendant Andujar agreed at the March 29, 2016 oral argument that his motion to suppress the fruits of the search warrant was moot. March 29, 2016 minute entry [44]. With respect to the additional co-defendants, defendant Luis Montanez filed no pretrial motions and defendant Orlando Rios informed me at the December 15, 2015 proceeding that no portion of his pretrial motions [29] remain in dispute.

**ANALYSIS**

A.   **Defendants' Motions**

    1.   **Motions to Join**

        Without identifying any specific motions, defendants move to join in each other's motions.  Torre Affirmation [28], ¶61; Stachowski Affirmation [25], ¶114.  These motions are granted to the extent the pretrial motions are applicable to the defendant and he has standing to assert such motions.

    2.   **Motions to Suppress Title III Evidence**

        Although defendant Molina-Rios' motion does not identify any specific Title III order that he is challenging and defendant Andujar identifies a variety of Title III orders, the parties agreed at oral argument that the relevant Title III orders are the March 23, 2015 Order for telephone number (716) 465-2951 ("target telephone no. 1")[3], April 24, 2015 Order for target telephone no. 1  and telephone number (716) 256-8466 ("target telephone no. 2")[4], and May 13, 2015 Order for telephone number (716) 936-4373 ("target telephone no. 3").[5]  Each Order was signed by District Judge William M. Skretny and supported by an affidavit from Drug Enforcement Administration Task Force Officer ("TFO") Clinton Calloway, Jr.  The government concedes that both defendants have standing to challenge these wiretaps.  *See* Government's Response to defendant Molina-Rios' pretrial motion [34], p. 25; government's Response to defendant Andujar's pretrial motion [35], p. 30.

        "The defendant bears a significant burden when seeking to suppress an authorized wiretap: once the authorizing judge has made the requisite probable cause and necessity

---

[3] 15-MR-30
[4] 15-MR-30
[5] 15-MR-59

determinations, any court reviewing those determinations must grant 'considerable deference' to the authorizing judge." United States v. Rodriguez-Perez, 2012 WL 3578721, *6 (S.D.N.Y. 2012). In reviewing the issuance of a wiretap order, the court does not conduct a *de novo* review; instead, it determines whether "the facts set forth in the application were minimally adequate to support the determination that was made". United States v. Yannotti, 541 F.3d 112, 124 (2d Cir. 2008). This showing is "'tested in a practical and commonsense fashion'". United States v. Concepcion, 579 F.3d 214, 218 (2d. Cir. 2009) (*quoting* S.Rep. No. 90–1097 (1968)).

### a.     Necessity

Defendants move to suppress the Title III evidence in this case by arguing that the applications failed to establish necessity as required by 18 U.S.C. §2518(1)(c). Torre Affirmation [28], ¶¶41-43; Stachowski Affirmation [25], ¶¶83-96. Title III requires that an application for the interception of electronic communications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous". 18 U.S.C. §2518(1)(c). "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful will not satisfy Title III." Concepcion, 579 F.3d at 218. However, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods". Id.

"[T]he Government meets its burden by submitting a wiretap application supported by an affidavit describing how traditional investigative techniques had failed to provide more than 'a limited picture' of a narcotics organization." United States v. Valdez, 1991

WL 41590, *2 (S.D.N.Y.), <u>aff'd</u>, 952 F.2d 394 (2d Cir. 1991).  "[W]iretapping is particularly

appropriate when the telephone is routinely relied on to conduct the criminal enterprise under

investigation".  <u>United States v. Steinberg</u>, 525 F.2d 1126, 1130 (2d Cir. 1975).  Additionally,

"[w]here there is a conspiracy at work, the need for a wiretap may be compelling:  the

clandestine nature of alleged conspiracies makes them relatively less susceptible to normal

investigative techniques".  <u>United States v. Kazarian</u>, 2012 WL 1810214, *3 (S.D.N.Y. 2012).

### March 23, 2015 Application

TFO Calloway's Affidavit [47-2 – 47-3] submitted in support of the initial March

23, 2015 Title III application acknowledged that the "[n]ormal investigative techniques" utilized

had gathered information "probative of ongoing drug-trafficking" ([47-3], ¶83), but stated that

these techniques had not yielded "sufficient evidence to identify, and prove, beyond a reasonable

doubt, the guilt of the members of this conspiracy, including the identifies of individuals

supplying the drugs, couriers who transport the drugs and/or money, individuals to whom the

drugs are distributed, the locations where the drugs and drug proceeds are stored, and the

location of assets purchased using the proceeds from unlawful activities" (<u>id</u>.).

Beyond these generalized representations, TFO Calloway described why trash

pulls and grand jury subpoenas were not used in the investigation (<u>id</u>., ¶¶86, 103).  He also

detailed the information obtained through the use of confidential sources ("CSs"), but explained

that the continued use of CSs proved to be problematic, since CS-1 had been incarcerated, CS-2

was only able to make purchases from street-level distributors, CS-3, CS-4, CS-6, and CS-7

ceased their cooperation for judicial consideration at the conclusion of their criminal cases, and

CS-5's whereabouts were unknown (<u>id</u>., ¶91).  He further explained that CSs are generally

unable to give a complete picture of the conspiracy due to the fact that they "often only have

limited knowledge of an organization" (id., ¶92), and that the ability to use CSs was limited since many of the believed conspirators were family members who would likely not cooperate (id., ¶89).

TFO Calloway also acknowledged that the use of controlled purchases by undercover law enforcement officers "produced significant results", but "the overall effectiveness" of that technique was "near its limit", since it was unlikely that undercover law enforcement officers would be able "to advance any further up the drug supply chain or establish direct access to those higher up in the supply chain" (id., ¶95). Likewise, he acknowledged that while physical surveillance, which had been employed numerous times, had proven to be of "some value in identifying certain activities and associates of the interceptees", its utility was limited as a result of the "evasive and unusually cautious . . . movements" of the suspects (id., ¶99). Specifically, he noted that defendant Molina-Rios was residing in his second residence in nine months, and defendant Orlando Rios was residing in his second residence in three months (id., ¶100). In similar detail, TFO Calloway described why law enforcement's use of two pole cameras, search warrants and interviews was not sufficient to advance the goals of the investigation (id., ¶¶72-75, 87, 102-03).

**April 24, 2015 Application**

In the subsequent April 24, 2015 application [48-2 – 48-3], TFO Calloway reiterated much of what was contained in his initial affidavit concerning the use, limitations, and difficulties with the traditional investigative techniques utilized. [48-3], ¶¶148-66. He also identified the additional information obtained from the initial wiretap for telephone no. 1, but noted that the investigation had still not "expose[d] the full roles of [defendants Molina-Rios and

Orlando Rios]; the locations they use to hide illegal drug proceeds, weapons or heroin; the roles

of other members of the [drug trafficking organization]" (id., ¶144).

## May 13, 2015 Application

In his May 13, 2015 Affidavit [49-3 – 49-4], TFO Calloway provided an update

of the additional information learned from the wiretaps on target telephone nos. 1 and 2 ([49-4],

¶¶82-85), and additional information learned from other investigative techniques, including:

- Noting that the pole camera captured a meeting between defendants Molina-Rios and Orlando Rios on April 13, 2015, but failed to "establish why they were meeting" (id., ¶68);

- A GPS tracking device had been employed in defendant Molina-Rios' vehicle, which provided "helpful data" concerning his travel to New York City, the location of the believed source of the heroin, but he ceased using that vehicle following a traffic accident (id., ¶69); and

- Surveillance in conjunction with an intercepted telephone call on target telephone no. 1 led to an April 17, 2015 traffic stop of a vehicle containing 13 bags of heroin (id., ¶78).

However, as in his earlier applications, he continued to discuss the limitations of

other investigative techniques and stated that the investigation at that point had still failed to

identify the "full scope of the conspiracy", "the location of the source of supply in the Bronx,

New York area", "the locations used to store heroin, drug proceeds and weapons", "all members

of the [drug trafficking organization], and . . . the role of the members already identified" (id.,

¶65).

Although defendant Andujar primarily challenges the initial March 23, 2015

wiretap (Stachowski Affirmation [25], ¶90), he argues that "nowhere in the subsequent . . .

applications was there any indication that the authorities paused to consider whether the

previously acquired intercepted communications, coupled with conventional techniques, would

be adequate" (id., ¶109).  Relying heavily on United States v. Lilla, 699 F.2d 99 (2d Cir. 1983),

defendant Andujar argues that the "facts presented in support of [the necessity requirement] are

woefully inadequate", noting that there is "[n]o valid reason was proffered as to why additional

physical surveillance would not yield additional valuable information", and "[n]o details are

provided as to why the confidential sources could not continue to produce information to

enhance the investigation" (id., ¶¶92, 95, 96).

            These arguments are not borne out by the applications.  TFO Calloway provided

specifics about the use, limitations, and difficulties associated with the use of CSs and physical

surveillance.  While some of his assessments of the utility of  traditional investigative techniques

may appear generalized, "[t]he fact that similar drug trafficking investigations often entail

similar analyses of the viability of various investigative techniques does not alter the necessity of

a wiretap in one particular case.  Indeed, it should come as no surprise that the facts supporting

the conclusion that the alternative methods would be unavailing often are similar from one

narcotics operation to another".  United States v. Parris, 2014 WL 2745332, *9 (S.D.N.Y. 2014).

            Further, "wiretaps are permissible where normal investigative techniques are able

to uncover evidence of discrete crimes by members of a criminal enterprise but not able to

uncover evidence of the scope of the enterprise as a whole".  United States v. Barrera, 950

F.Supp. 2d 461, 470-71 (E.D.N.Y. 2013) (citing cases).  See United States v. Hinton, 543 F.2d

1002, 1011-12 (2d Cir. 1976) ("even though . . . officers may have garnered sufficient

information without the use of wiretaps to support an indictment against Matthews, and possibly

against a few others, there was every reason to believe that additional co-conspirators were

involved who could not be successfully investigated without wiretapping. The order instituting

wiretapping was thus not in error"); United States v. Rajaratnam, 2010 WL 4867402, *21

(S.D.N.Y. 2010) ("the fact that the SEC's investigation had identified certain sources did not preclude a showing that a wiretap was necessary to confirm those sources and fully uncover Rajaratnam's network of sources").

As discussed above, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods".   <u>Concepcion</u>, 579 F.3d at 218.  That was done here.  Therefore, I conclude that the facts set forth in the applications were sufficient to demonstrate that the interception of wire communications was necessary to attain the goals of the investigation, and I recommend that this portion of the motions be denied.

### b.      Probable Cause

"Under Title III, a court may authorize a wiretap based upon a showing of probable cause that (1) an individual is committing, has committed, or is about to commit, a crime; (2) communications concerning that crime will be obtained through the wiretap; and (3) the telephone to be wiretapped is being used for criminal purposes or is about to be used or owned by the target of the wiretap."  <u>United States v. Sang Bin Lee</u>, 2014 WL 144642, *1 (S.D.N.Y. 2014).  "The standard for probable cause applicable to §2518 is the same as the standard for a regular search warrant . . . . [P]robable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity."  <u>United States v. Diaz</u>, 176 F.3d 52, 110 (2d Cir. 1999).

While defendant Anjduar argues that probable cause is lacking, he makes no particular arguments in support of that argument or identify which application he is challenging. *See* Stachowski Affirmation [25], ¶75.   "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace".  United States v. Zannino, 895 F.2d 1, 17 (1st  Cir. 1990). Therefore, I recommend that this motion be denied.  *See* United States v. Fuentes, 2012 WL 4754736, *3 (W.D.N.Y.) (McCarthy, M.J.), adopted 2012 WL 4754744 (W.D.N.Y. 2012) (Arcara, J.) (Defendant's "arguments are . . . largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority.  To the extent his arguments are raised in such a fashion, I consider them waived, and recommend the denial of this aspect of defendant['s] . . . motion on this basis").

Defendant Molina-Rios' arguments fare no better.  Without identifying a particular application, he argues "upon information and belief" that probable cause was lacking because the "confidential informant sources were inherently reliable and suspect". Torre Affirmation [28], ¶39.  However, even accepting that argument, TFO Calloway's initial March 23, 2015 Affidavit  [47-2 – 47-3] provided ample probable cause resulting from the other portions of the investigation, including numerous controlled purchases made by undercover law enforcement officers, recorded communications by the undercover law enforcement officers, the results of earlier search warrants, surveillance efforts, and call record details (id., ¶¶25-81).

Moreover, as the government argues, even if probable cause was lacking, none of the applications were so deficient as to negate the officer's reasonable reliance on it under United

States v. Leon, 468 U.S. 897, 922 (1984).[6]  Government's Response to defendant Andujar's

pretrial motions [35], pp. 33-34.  Therefore, I recommend that this motion be denied.

### c.    Minimization

Title III requires that the interception of communications "be conducted in such

a way as to minimize the interception of communications not otherwise subject to interception".

18 U.S.C. §2518(5).  Significantly, "[s]urveilling agents are not forbidden from intercepting all

non-relevant conversations, but must minimize such interceptions".  United States v. Parrilla,

2014 WL 1621487, *9  (S.D.N.Y. 2014).  "Compliance with the requirement is determined by an

analysis of the reasonableness of the surveilling agents' conduct based on the totality of

circumstances."  Sang Bin Lee, 2014 WL 144642 at *6.

Defendant Molina-Rios argues "[u]pon information and belief" that "the

interception of electronic communications was not minimized and particularized such as to

comply with the requirements of federal law government the interception of electronic

communications".  Torre Affirmation [28], ¶40.  No other argument or support is offered in

support of this skeletal motion.  Since "a litigant has an obligation to spell out its arguments

squarely and distinctly, or else forever hold its peace",  Zannino, 895 F.2d at 17,  I recommend

that this motion be denied.

### 3.    Motion for a __Franks__ hearing[7]

Relying on United States v. Salemme, 978 F.Supp. 343 (D.Mass. 1997),

defendant Andujar requests that "a Franks hearing be conducted and that prior to that hearing the

---

[6]        "Although Leon does not directly address electronic surveillance, numerous courts have extended
its holding to such evidence."  United States v. Bellomo, 954 F. Supp. 630, 638 (S.D.N.Y. 1997) (citing
cases).

[7]        Franks v. Delaware, 438 U.S. 154 (1978).

government be directed to provide the defense with all documents and information which might tend to show that the government had failed to disclose all of the information regarding the necessity requirement". Stachowski Affirmation [25], ¶105.

A defendant is entitled to a <u>Franks</u> hearing where he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause". <u>Franks</u>, 438 U.S. at 155-56.   In support of his entitlement to a <u>Franks</u> hearing, defendant Andujar argues that "the ordering judge should have been apprised of the totality of the physical surveillances that were conducted during this investigation", and that counsel "believes that more physical surveillances" than reflected in the applications was conducted. Stachowski Affirmation [25], ¶100.

These arguments, which are not grounded in an evidentiary showing, are insufficient to meet defendant Andujar's burden of establishing his entitlement to a <u>Franks</u> hearing.  I also conclude that defendant Andujar has not established his entitlement to discovery to support that motion.  While he relies heavily on <u>Salemme</u>, there the court received evidence of what it considered to be material omissions and misleading information concerning the necessity showing in a wiretap application and,  based upon that showing,  directed that additional disclosures be made by the government.  978 F.Supp. at 347-55.  A similar evidentiary showing has not been made here.  Simply, "<u>Salemme</u> does not support a routine pretrial discovery request for any materials used in the preparation of Title III applications as sought by Defendants in [this] case".  <u>United States v. Chimera</u>, 201 F.R.D. 72, 80-81 (W.D.N.Y. 2001) (Arcara, J./Foschio, M.J.).  Therefore, I recommend that this motion be denied.

### 4.       Motion to Suppress Statements[8]

Without identifying any specific statement,[9] defendant Molina-Rios moves to suppress statements asserting various grounds for suppression, including that the statements were involuntary, taken without benefit of proper <u>Miranda</u> warnings, and the product of an unlawful arrest. Torre Affirmation [28], ¶¶45-50.  However, no specifics are offered for any of these arguments (<u>id</u>.).  Nor is there any affidavit (or declaration) in support of the motion from defendant Molina-Rios. Therefore, I recommend that this motion be denied without a hearing. *See* <u>United States v. Tata</u>, 2011 WL 7004205, *1 (W.D.N.Y. 2011), <u>adopted</u>, 2012 WL 92558 (W.D.N.Y.2012) (Siragusa, J.) ("An attorney's affidavit made without personal knowledge is insufficient to create an issue of fact requiring an evidentiary hearing"); <u>United States v. Perryman</u>, 2013 WL 4039374, *6 (E.D.N.Y. 2013) ("Courts in this Circuit have repeatedly denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge" (citing cases)).

### 5.       Motions for Fed. R. Civ. P. ("Rule") 16 Discovery and for Notice of Intention Pursuant to Rule 12

Apart from the government's <u>Brady</u>,[10] <u>Giglio</u>,[11] and <u>Jencks</u> Act (18 U.S.C. §3500) obligations, which are addressed separately, "Rule 16 is . . . the sole authorized vehicle

---

[8]       Defendant Molina-Rios also moves to suppress physical evidence seized from the search of 74 Fillmore Avenue, Lower Apartment, Buffalo, New York. Torre Affirmation [28], ¶¶ 51-58.  Since I signed the search warrant for that premises, the motion is being addressed by Magistrate Judge Roemer at defendant's request.  *See* February 29, 2016 Text Order [43].

[9]       He may be unable to identify any such statements because the government represents that it is "unaware of any statements made by defendant, either before or after arrest, which fall within the purview of . . . Rule 16(a)(1)(A)".  Government's Response to defendant Molina-Rios' pretrial motion [34], p. 33.

[10]      <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[11]      <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases". United States v. Louis, 2005 WL 180885, *2 (S.D.N.Y. 2005).  Defendants move pursuant to Rule 16 for various forms of discovery and for notice pursuant to Rule 12 of the evidence that the government intends to utilize at trial.  Torre Affirmation [28], ¶¶8-15; Stachowski [25], ¶¶6-23. In response, the government states that it has "complied, and intends to continue to comply, with the requirements of Rule 16" and that it has "previously provided notice pursuant to Rule 12(b)(4)."  Government's Response to defendant Molina-Rios' pretrial motion [34], p. 2.  It also argues that certain of defendants' requests fall outside of the scope of Rule 16.  Government's Response to defendant Andujar's pretrial motion [35], p. 12.  Therefore, I will individually address the categories of discovery permitted by Rule 16:

### a.      Defendants' Statements

The government states that it "believes that it has disclosed defendant's statements to law enforcement personnel".  Government's Response to defendant Andujar's pretrial motion [35], p. 12.  At this point, I have no reason to question the government's representations or whether it has otherwise complied with its Rule 16 discovery obligations.  *See* United States v. Johns, 336 F .Supp.2d 411, 424 (M.D.Pa.  2004) ("The court is entitled to rely on the representations of counsel, as officers of the court"); Theodore v. State of New Hampshire, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him").  Based upon the government's representations, which are unchallenged by defendants, this portion of  defendants' motions are denied.

To the extent defendants also seek co-conspirator statements (Stachowski Affirmation [25], ¶¶8-12) and for a hearing pursuant to Fed. R. Evid. 104 to determine the

admissibility of the co-conspirators' statements (id., ¶¶50-51), the government opposes those requests on ground that they are beyond the scope of Rule 16(a)(1). Government's Response to defendant Andujar's pretrial motion [35], pp. 12-13.  I agree. "Rule 16 does not encompass co-conspirator statements . . . . The Jencks Act provides the exclusive procedure for discovering statements that government witnesses - including coconspirators - have given to law enforcement agencies."  United States v. De Leon–Navarro, 2012 WL 2254630, *2 (W.D.N.Y. 2012) (Schroeder, M.J.).  Likewise, "Fed. R. Evid. 801(d)(2)(E) does not contain a required pretrial notice and therefore, there is no requirement on the part of the government to disclose statements made by a defendant's co-conspirator during and in furtherance of the conspiracy".  Id.  "The admissibility of any such statements are best addressed by the trial judge." Id.  Therefore, this portion of defendants' motions are denied, without prejudice to a renewed request to the trial judge for a hearing to determine the admissibility of co-conspirator statements.

### b.    Prior Criminal Record

The government states that copies of defendants' criminal records have been produced. Government's Response to defendant Andujar's pretrial motion [35], p. 16; government's Response to defendant Andujar's pretrial motion [34], p. 4.  Therefore, this portion of defendants' motions are denied as moot.

### c.    Documents and Objects

The government states that it "has provided or made available all photographs, papers, books, documents, [and] tangible objects" in its possession which it "intends to utilize at trial".  Government's Response to defendant Andujar's pretrial motion [35], p. 19. However, Rule 16(a)(1)(E) requires not only that the government produce those items that it intends to use

at trial, but also those items that are "material to preparing the defense" or "obtained from or belongs to the defendant". *See* Rule 16(a)(1)(E)(i), (iii). Therefore, this portion of defendant's motions is granted.  To the extent that the government has not already done so, it shall fully comply with Rule 16(a)(1)(E).

### d.      Reports of Examinations and Tests

The government states that "it has provided forensic laboratory reports of the seized controlled substances, firearms, and DNA (where applicable)" and "will provide any additional laboratory reports upon receipt". Government's Response to defendant Andujar's pretrial motion [35], p. 14.   Based upon these representations, this portion of defendants' motions are denied as moot.

### e.      Expert Witnesses

The government states that it "will timely provide the experts' credentials and methods so that the chemists may be evaluated and cross-examined by defendants, if any defendant declines to stipulate that the controlled substances are as they have been identified during chemical analysis" and will provide "summaries of anticipated expert testimony in accordance with the standard District Court pretrial order" (id., pp. 14-15, 19).  It also represents that it will "supply the name and qualifications of government law enforcement experts relating to vague/coded language, and firearms",  and if it decides to use other expert witnesses, "it will fully comply with [Rule] 16(a)(1)(G) and Fed. R. Evid. 702, 703, and 705" (id., p. 19).

Based upon these representations, defendants' motions are denied as moot. Any expert disclosures pursuant to Rule 16(a)(1)(G) shall occur no later than 30 days before trial, or as otherwise directed by the trial judge.  *See* United States  v. Lino, 2001 WL 8356, *21

(S.D.N.Y. 2001) ("this Court directs that the Government provide expert witness disclosure to defendants thirty days before trial"); United States v. Mullen, 243 F.R.D. 54, 68 (W.D.N.Y. 2006) (Foschio, M.J.).

6.      **Motions for Brady/Giglio Material**

Defendants move for pretrial disclosure of Brady/Giglio materials and identify a number of specific materials that they contend fall within the ambit of this authority. *See* Torre Affirmation [28], ¶¶16-23; Stachowski Affirmation [25], ¶¶52-54. The government responds that it is currently "unaware of any Brady material related to [these defendants]". Government's Response to defendant Molina-Rios' pretrial motion [34], p. 10; government's Response to defendant Andujar's pretrial motion [35], pp. 28-29. Consistent with its general practice, the government states that it will seek "to disclose directly exculpatory information as soon as [it] becomes aware of it" (id.). With respect to Brady impeachment material, the government agrees to produce such material "sufficiently in advance of the proof at trial for the information to be effectively useful to the defendant[s]" (id.).

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (*citing* Giglio, 405 U.S. at 154). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant". Id. at 146. "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144. "[T]he time

required for the effective use of a particular item of evidence will depend on the materiality of

that evidence . . . as well as the particular circumstances of the case".  Id. at 146.

Based upon the government's representations, defendants' motions are denied.

Consistent with Coppa, the government shall timely disclose Brady and Giglio materials to

defendants.  *See* United States v. Hill, 2012 WL 912948, *5 (W.D.N.Y. 2012) (Schroeder, M.J.).


**7.    Motions for Disclosures Pursuant to Fed. R. Evid. 404(b)**

Defendants seek pretrial notification of any evidence that the government

contends would be admissible under Fed. R. Evid. 404(b).  Torre Affirmation [28], ¶¶24-28;

Stachowski Affirmation [25], ¶48. The government responds that it will disclose notice of its

intent to use Fed. R. Evid. 404(b) evidence "at the time it is ordered to do so by the trial court".

Government's Response to defendant Molina-Rios' pretrial motion [34], p. 12; government's

Response to defendant Andujar's pretrial motion [35], p. 18. It further provides "preliminary"

notification that it intends to introduce at trial "all prior criminal conduct acts or wrongs for the

purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan,

knowledge, identity, and the absence of a mistake or accident" (id.).

Fed. R. Evid. 404(b)(2)(A) requires that the  government "provide reasonable

notice of the general nature of any such [Fed. R. Evid.  404(b)] evidence that the prosecutor

intends to introduce at trial . . . and . . . do so before trial – or during trial if the court, for good

cause, excuses the lack of pretrial notice".  Therefore, based upon the government's

representations, these motions are denied.  To the extent that it has not already done so, the

government shall provide notice of the Fed. R. Evid. 404(b) evidence it intends to use at trial as

directed by the trial judge.  *See* <u>United States v. Busch</u>, 2014 WL 2435596, *5 (W.D.N.Y. 2014) (Scott, M.J.).

>    **8.**     **Motions for Disclosures Pursuant to Fed. R. Evid. 608 and 609**

Defendants seek disclosure of evidence pursuant to Fed. R. Evid. 608 and 609. Torre Affirmation [28], ¶¶24-28; Stachowski Affirmation [25], ¶48.  Although the government argues that it has "no obligation to provide a defendant with any information that could be used to impeach him pursuant to Rule 608, should he elect to testify", it agrees to disclose notice of its intent to use Fed. R. Evid. 608 and 609 evidence "at the time it is ordered to do so by the trial court".  Government's Response to defendant Molina-Rios' pretrial motion [34], p. 12; government's Response to defendant Andujar's pretrial motion [35], p. 18.

"With respect to the defendant's requests under Rules 608 and 609, the only notice requirement imposed by either applies where a party intends to introduce evidence of a conviction that is more than ten years old. Under such circumstances, Rule 609(b) mandates that 'the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.' To the extent the government intends to use a conviction more than 10 years old, it must comply with this requirement. The government has no obligation to provide the defendants with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify." <u>United States v. Barnett</u>, 2009 WL 1044559, *2 (W.D.N.Y. 2009) (Scott, M.J.).  Therefore, based upon the government's representations, these motions are denied. The government shall provide notice under Fed. R. Evid. 609(b) as directed by the trial judge.

**9.      Motion for Preservation of Rough Notes**

Defendant Molina-Rios seeks preservation of rough notes and any "any and all evidence acquired in their investigation of the defendant". Torre Affirmation [28], ¶¶29-32. The government responds that it has no objection to retaining notes taken during the investigation of this case. Government's Response to defendant Molina-Rios' pretrial motion [34], p. 13. However, it fails to address defendant Molina-Rios' request to preserve evidence. Therefore, that portion of the motion is granted, but the motion is otherwise denied based upon the government's representations.

**10.      Motions for Early Disclosure of <u>Jencks</u> Act Material**

Defendants move for early disclosure of <u>Jencks</u> Act material. Torre Affirmation [28], ¶¶33-35; Stachowski Affirmation [25], ¶¶70-74. However, as the government argues, "[c]ourts in this Circuit have consistently held that district courts lack the power to mandate early production of <u>Jencks</u> Act material". <u>United States v. Morgan</u>, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* <u>Coppa</u>, 267 F.3d at 145 (the "<u>Jencks</u> Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); <u>In re United States</u>, 834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the <u>Jencks</u> Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act"); <u>Parris</u>, 2014 WL 2745332 at *14 ("The <u>Jencks</u> Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); <u>United States v. Scott</u>, 2015 WL 1525580, *4 (D. Conn. 2015) ("The Second Circuit has consistently held that a district court's 'power to order pretrial disclosure is constrained by the <u>Jencks</u> Act,'

and that the district court may not order advance disclosure inconsistent with the <u>Jencks</u> Act

itself"). Nonetheless, the government agrees to produce it <u>Jencks</u> Act material prior to trial, but

reserves its right to withhold such material until a witness testifies where earlier production

would expose the witness or his/her family to danger. Government's Response to defendant

Molina-Rios' pretrial motion [34], p. 14; government's Response to defendant Andujar's pretrial

motion [35], p. 29. Based on the government's representations, defendants' motions are denied.


**11.    Motions for Bills of Particulars**

Defendants seek various particularization. Torre Affirmation [28], ¶36;

Stachowski Affirmation [25], ¶¶4-5. Rule 7(f) "permits a defendant to seek a bill of particulars

in order to identify with sufficient particularity the nature of the charge pending against him,

thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of

double jeopardy should he be prosecuted a second time for the same offense". <u>United States v.</u>

<u>Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the

charges of the indictment are so general that they do not advise the defendant of the specific acts

of which he is accused." <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden

is upon defendants to show that non-disclosure of the requested particulars would lead to

prejudicial surprise at trial or would adversely affect defendants' rights". <u>United States v.</u>

<u>Duarte</u>, 2014 WL 29366, *1 (W.D.N.Y. 2014) (Scott, M.J.).

"In deciding a motion for a bill of particulars, the important question is whether

the information sought is necessary, not whether it is helpful." <u>United States v. Conley</u>, 2002

WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence,

witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

 The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

 "[T]here is a special concern for particularization in conspiracy cases." United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y.2012) (Scott, M.J.) (citing United States v. Davidoff, 845 F.2d 1151 (2d Cir.1988)). Thus, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge". Barnes, 158 F.3d at 666.

 Here, the Indictment [1], alleges that from "in or about March 2014 . . . and continuing to on or about the date of the return of this Indictment, in the Western District of NewYork, and elsewhere, [defendants] did knowingly, willfully and unlawfully combine, conspire and agree together and with others known and unknown, to . . . possess with intent to distribute, and to distribute, 100 grams or more of a mixture and substance containing heroin".

 In opposing defendants' motions for bills of particulars, the government argues that the "voluminous discovery . . . provided, more than adequately apprises each of the defendants of the nature of the charges pending against them, thereby enabling them to prepare

for trial".  Government's Response to defendant Molina-Rios' pretrial motion [34], p. 15;

government's Response to defendant Andujar's pretrial motion [35], p. 2. Specifically, it points

to the fact that defendants have been provided with "all . . . applications, affidavits, and orders

for Title III wiretaps", "audio and text files containing [the] intercepted conversations and line

sheets", and "photographs, surveillance reports, interview reports, results of search warrants,

results [of] searches regarding the contents for the cellular phones, lab reports for controlled

substances and other documents" (id.).

   Although the Indictment only provides the "bare bones" of the alleged conspiracy,

it is not alleged to be an expansive conspiracy covering a number of years.  Coupled with the

limited scope of the alleged conspiracy, the government details various materials related to the

its investigation of the alleged conspiracy that have been provided to defendants. Defendant do

not dispute that these disclosures are sufficient to permit them to prepare for trial.

   Nor, as the government notes, does either defendant attempt to demonstrate why

the requested particularization is necessary.  Government's Response to defendant Molina-Rios'

pretrial motion [34], p. 15; government's Response to defendant Andujar's pretrial motion [35],

p. 2.  Under these circumstances, these motions are denied.


### 12. Motion for Identity of Informants

   Defendant Andujar moves for disclosure of informant identities.  Stachowski

Affirmation [25], ¶¶55-57.  The government is not required to provide early disclosure of the

identities of informants unless "an informer's identity, or of the contents of his communication,

is relevant and helpful to the defense of an accused, or is essential to a fair determination of a

cause".  Roviaro v. United States, 353 U.S. 53, 60–61  (1957).  "The defendant bears the burden

of showing the need for disclosure of an informant's identity . . . and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997).

"The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988). Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

Other than arguing that "it is necessary that informant identities be revealed so that counsel may attempt to interview them and otherwise investigate their allegations, biases, and benefits derived from cooperating with the government" (Stachowski Affirmation [25], ¶56), defendant Andujar has "not shown the informant's testimony will be a significant factor in determining [his] guilt or innocence". United States v. Pierce, 493 F.Supp.2d 611, 621 (W.D.N.Y. 2006) (Arcara, J./Foschio, M.J.). See United States v. Boone, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("Mere speculation . . . that the informer may possibly be of some assistance does not overcome the strong public interest in protecting informants").

Alternatively, defendant Andujar requests that I conduct an *in camera* review to evaluate the competing interests in such disclosure. Stachowski Affirmation [25], ¶57. However, without defendant Andujar articulating any grounds warranting such review, this

request is also denied.  *See* United States v. Monge, 2012 WL 1900363, *11 (W.D.N.Y. 2012)

(Schroeder, M.J.) ("Similarly . . .  defendant has failed to sufficiently articulate a need for this

Court to conduct an *in camera* review to evaluate the competing interest").


13.     **Motion for Disclosure of Any Agreement Between the Government and Prospective Witnesses**

Defendant Andujar seeks disclosure of "any agreement, concession, or grant of

immunity and its terms, whether the same be formally granted or informally granted, by the

United States of America to any witness or prospective witness in this case".  Stachowski

Affirmation [25], ¶¶58-69.  As defendant Andujar concedes, the discovery sought constitutes

Giglio material, which the government has agreed to produce in advance of trial.  *See* United

States v. Thomas, 2009 WL 4015420, *11 (W.D. Pa. 2009).  For the reasons discussed above,

the government's agreement to provide these materials in advance of the trial is sufficient.

Therefore, this motion is denied.


14.     **Motions for Leave to Make Other Motions**

Defendants move for leave to file additional motions.  Torre Affirmation [28],

¶59; Stachowski Affirmation [25], ¶119.   These motions are denied, without prejudice to the

possibility of additional motions in the future, upon a showing of good cause for why they were

not timely asserted.  *See* Rule 12(c)(3).


**B.     Government's Cross-Motions for Reciprocal Discovery**

The government moves for reciprocal discovery pursuant to Rule 16(b).

Government's Response to defendant Molina-Rios' pretrial motion [34], pp. 43-44;

government's Response to defendant Andujar's pretrial motion [35], p. 42.  Defendants have not

opposed this request. Therefore, the government's motions are granted.  "Defendant[s] shall

provide such discovery, if any, not later than 30 days prior to trial or such other date as the

District Judge may direct."  United States v. Sikut, 488 F.Supp.2d 291, 304-05 (W.D.N.Y. 2007)

(Foschio, M.J./Arcara, J.).

    The government also moves for disclosures pursuant to Fed. R. Evid. 807.

Government's Response to defendant Molina-Rios' pretrial motion [34], p. 44; government's

Response to defendant Andujar's pretrial motion [35], p. 43.  Defendants have also not opposed

this request.  Therefore, it is also granted, and they shall comply with the notice provisions of

Fed. R. Evid. 807(b).


# CONCLUSION

    For these reasons, the government's cross-motions for reciprocal discovery are

granted, defendants' non-dispositive motions are granted in part and denied in part, and I further

recommend that defendants' motions to suppress wiretap evidence and statements be denied.

Unless otherwise ordered by Judge Geraci, any objections to this Report, Recommendation and

Order must be filed with the clerk of this court by May 13, 2016 (applying the time frames set

forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for extension of this deadline must

be made to Judge Geraci.  A party who "fails to object timely . . . waives any right to further

judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988);

Thomas v. Arn, 474 U.S. 140, 155 (1985).

    Moreover, the district judge will ordinarily refuse to consider de novo arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u>

<u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local

Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of

the proposed findings and recommendations to which objection is made and the basis for each

objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the

objections must include "a written statement either certifying that the objections do not raise new

legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the

district judge's refusal to consider the objection.

Dated:  April 26, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge