IN THE UNITED STATES DISTRICT -COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

15-CR-122-G

DANIEL MOLINA-RIOS a/k/a Ponce,

Defendant.

## PLEA AGREEMENT

The defendant, DANIEL MOLINA-RIOS a/k/a Ponce, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.   THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to plead guilty to Count 1 of the Indictment which charges a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and distribution of 100 grams or more of heroin) for which the mandatory minimum term of imprisonment is 5 years and the maximum possible sentence is a term of imprisonment of 40 years, a fine of $5,000,000, a mandatory $100 special assessment and a term of supervised release of at least 4 years and up to life. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2.    The government agrees that an information pursuant to Title 21, United States Code, Section 851 will not be filed with respect to the charge, in the Indictment.

3.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 3 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.     ELEMENTS AND FACTUAL BASIS

4.     The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime: that an agreement existed between two or more persons to commit a controlled substance felony offense; that the defendant knew of the existence of the agreement; that the defendant intended to participate in the unlawful agreement; and that at least 100 grams of a mixture or substance containing heroin was reasonably foreseeable to the defendant as being within the scope of the agreement.

## FACTUAL BASIS

5.     The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

    a.     From in or about March 2014, the exact date being unknown, and continuing to on or about June, 2015, the exact date being unknown, in the Western District of New York, and elsewhere, the defendant, DANIEL MOLINA-RIOS a/k/a Ponce, did combine, conspire and

2

others

agree with ~~Orlando Rivera a/k/a "Lifo," Luis Montanez a/k/a "Weeky" and Jose Andujar~~ to knowingly, intentionally and unlawfully possess with intent to distribute, and distribute, 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance. Specifically, the defendant headed a wide-scale drug trafficking organization wherein he supervised several street-level dealers who used a series of cellular telephones to conduct daily sales with customers seeking to buy heroin or illegal use. During the conspiracy, the defendant made at least six (6) trips to the New York City area to purchase large quantities of heroin from a source of supply. The defendant purchased at least 300 grams of heroin on each trip to New York City. Additionally, during the time period of the conspiracy the Buffalo Police Department and New York State Police conducted sixty-six undercover heroin purchases from individuals subordinate to the defendant in the organization. Title III intercepts indicated that the defendant arranged for distribution of heroin to several street level drug "runners" who operated by using a cell phone of the day for in-coming customer calls. The proceeds of these sales were paid to the defendant, who was resupplied by a source in the New York City area. When customers complained about the quality of the heroin from the New York City supply, the defendant used co-defendant ~~Luis Montanez~~ as a local source of supply during the last few weeks of the conspiracy.

b.    The defendant exercised ultimate decision making authority and had complete authority over five or more other participants, including at least ten drug "runners" who were responsible for coordinating sales for incoming customers who contacted the drug trafficking organization on a "runner" phone each day. As such, the defendant had an aggravating role in the conspiracy.  The defendant also maintained a premise, located at, 74 Fillmore Avenue, Lower, Buffalo, New York, for the purpose of distributing the heroin that was sold on in the Western District of New York and elsewhere. A search of the residence on June 18, 2015 revealed six cell phones, packaging materials for heroin, and $14,293.00, in U.S. currency representing the proceeds from heroin distribution.

c.    At least 1 kilogram but less than 3 kilograms of heroin is the amount involved in the defendant's relevant conduct encompassed in Count 1 of the Indictment which could be readily proven by the government against the defendant. The defendant admits to this conduct.

## III.   SENTENCING GUIDELINES

6.     The defendant understands that the Court must consider but is not bound by

the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

7.     The government and the defendant agree that Guidelines § § 2D1.1(a)(5) and

2D1.1(c)(5) apply to the offense of conviction and provides for a base offense level of **30**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.     The government and the defendant agree that the following specific offense

characteristic does apply:

a.     the two (2) level increase pursuant to Guidelines § 2D1.1(b)(12)
(maintaining premises to manufacture or distribute a controlled
substance).

### U.S.S.G. CHAPTER 3 ADJUSTMENTS

9.     The government and the defendant agree that the following adjustment to the

base offense level does apply:

a.     The four (4) level upward adjustment of Guidelines § 3B1.1(a)
(aggravating role in offense).

### ADJUSTED OFFENSE LEVEL

10.    Based on the foregoing, it is the understanding of the government and the

defendant that the adjusted offense level for the offense of conviction is **36**.

4

## ACCEPTANCE OF RESPONSIBILITY

11.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further moves the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 33.

## CRIMINAL HISTORY CATEGORY

12.     It is the understanding of the government and the defendant that the defendant's criminal history category is V. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13.     It is the understanding of the government and the defendant that, with a total offense level of 33 and criminal history category of V, and taking into account the statutory maximum penalties, the defendant's sentencing range would be a term of imprisonment of 210 to 262 months, a fine of $17,500 to $5,000,000 and a period of supervised release of 4 to 5 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement.

14.     The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the

5

application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

15.    The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.    STATUTE OF LIMITATIONS

16.    In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.    GOVERNMENT RIGHTS AND RESERVATIONS

17.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant

6

concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment; and

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

18.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office in the collection of any unpaid financial obligation.

## VI.   APPEAL RIGHTS

19.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

20. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

21. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. TOTAL AGREEMENT AND AFFIRMATIONS

22. This plea agreement represents the total agreement between the defendant, DANIEL MOLINA-ROIS A/K/A PONCE, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
Acting United States Attorney
Western District of New York

BY: _____

MEGHAN A. TOKASH
Assistant United States Attorney

Dated: August __, 2017

8

I have read this agreement, which consists of 9 pages. I have had a full opportunity to discuss this agreement with my attorney, Nelson Torre, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

Daniel Molina Rios

DANIEL MOLINA-RIOS
Defendant

Dated: August ___, 2017

NELSON TORRE, ESQ.
Attorney for the Defendant

Dated: August ___, 2017

9

**TO BE USED WITH INTERPRETER:**

I, _Abigail Kivera_ , hereby affirm under penalty of perjury that I am a

Spanish Interpreter and that I have carefully and fully translated the entire plea agreement set

forth above to the defendant, Daniel Molina-Rios; further that the defendant has indicated to

me that the defendant understands the terms of this plea agreement and that by signing this

agreement, the defendant agrees to all of its terms and conditions; the defendant has further

specifically acknowledged to me that the defendant is signing the agreement voluntarily and

after full consultation with the defendant's attorney, Nelson Torre, Esq.

DATED: August __9__, 2017.

_____
Interpreter

10