UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL MOLINA RIOS,

        Movant,

-vs-

UNITED STATES OF AMERICA,

        Respondent.

DECISION AND ORDER

Civil Case
No. 1:19-cv-00243-MAT

Criminal Case
No. 1:15-cr-00122-FPG

## I. Introduction

Daniel Molina-Rios ("Molina-Rios") has filed a *pro se* motion (Docket No. 158) to set aside or correct his sentence under 28 U.S.C. § 2255 ("§ 2255 Motion"). For the reasons discussed below, Molina-Rios's § 2255 Motion is denied.

## II. Factual Background and Procedural History

The conviction here at issue stems from Molina-Rios's involvement, as the leader/organizer of a heroin distribution ring, from March of 2014, until June 11, 2015. Molina-Rios would travel to New York City on a bi-weekly basis, returning home with approximately 300 grams of heroin. One of his cohorts then would disburse

-1-

the heroin to at least nine street-level dealers. A search warrant executed at Molina-Rios's residence revealed drug-packaging material, six cellular phones, and $14,293 in U.S. currency. In a one-count indictment, Molina-Rios and three others were charged with conspiring to possess with intent to distribute, and to distribute, 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Docket No. 1).

On August 9, 2017, Molina-Rios appeared with his attorney, Nelson Torre, Esq. ("Trial Counsel") before United States District Judge Frank P. Geraci, Jr. Pursuant to a written plea agreement ("Plea Agreement") (Docket No. 78) with the Government, Molina-Rios pleaded guilty to Count One of the indictment. As memorialized in the Plea Agreement, the parties agreed that a term of imprisonment between 210 and 262 months would be the appropriate sentence in this case. The parties further agreed that Molina-Rios's criminal history category was category V, that the base offense level for the offense

of conviction was level 30, and that the following adjustments should apply, resulting in a total offense level of 33: a two-level increase pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(12) (maintaining premises to manufacture or distribute a controlled substance); a four-level increase pursuant to U.S.S.G. § 3B1.1(a) (aggravating role in offense); and a three-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a), based on the his acceptance of responsibility.

On November 2, 2017, the parties appeared for sentencing before District Judge Geraci. A Presentence Investigation Report ("PSIR") was prepared by the United States Probation Office ("USPO") and submitted to the Court and the parties; a copy of the PSIR was filed under seal (Docket No. 102). District Judge Geraci imposed a term of 310 months' incarceration, which was the low end of the agreed-upon sentencing range in the Plea Agreement.

On February 21, 2019, Molina-Rios filed the § 2255 Motion. Respondent, the United States of America ("the Government") filed a Memorandum in Opposition (Docket No.

164) and a copy of the Plea Agreement, and Molina-Rios filed a Reply (Docket No. 166). At the Court's request, the Government produced the transcripts of the plea and sentencing proceedings (Docket Nos. 168 & 169).

**III.     Standard of Review**

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962); citations omitted). "The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has 'long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994), on reh'g, 45 F.3d 680 (2d Cir. 1995) (quoting United States v. Addonizio, 442 U.S.

178, 184 (1979)).

**IV. Discussion**

The Government contends that the § 2255 Motion is barred by Molina-Rios's express waiver, in the Plea Agreement, of his right to collaterally attack any sentence between 210 to 262 months, a fine of $17,500 to $5,000,000 and a period of supervised release of 4 to 5 years. "The right to appeal may be waived as part of a plea agreement," United States v. Chen, 127 F.3d 286, 289 (2d Cir. 1997) (citing United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995))," and "a knowing and voluntary waiver of the right to appeal a sentence within a particular Guidelines range is generally enforceable[.]" Id. (citing United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstances . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement."); other citation). However, "[a] waiver of the right to appeal [or collaterally attack a sentence] should only be

enforced . . . if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996).

Here, Molina-Rios's Plea Agreement included an express waiver of his right to appeal or collaterally attack her sentence. Furthermore, at the plea allocution, the Court (Geraci, D.J.) asked a series of questions to confirm that Molina-Rios comprehended the Plea Agreement and that he was pleading guilty of his own free will. See Plea Transcript ("P.") 3:14-17:11. In particular, Molina-Rios affirmed that he was satisfied with the representation provided by Trial Counsel. The Court advised Molina-Rios of the trial rights he would waive by entering a guilty plea, including the elements of the offense the Government would be required to prove beyond a reasonable doubt for him to be found guilty. Molina-Rios also agreed to the underlying factual allegations as set forth in the Plea Agreement. When Molina-Rios was asked directly if there was anything contained in the

Plea Agreement that he did not understand or if there was anything he wanted to ask his attorney, Molina-Rios responded by saying "No." Molina-Rios also asked by the Court whether he understood that he was giving up or waiving his right to appeal the sentence in this case if, in fact, the Court imposed a sentence in accordance with the Plea Agreement:

> THE COURT: And do you understand you're waiving or giving up your right to appeal the sentence imposed in this case if the Court imposed a sentence in accordance with the guidelines of 210 to 262 months or less? Do you understand that?
> THE DEFENDANT: Si'.
> THE COURT: Do you understand?
> THE DEFENDANT: Yes.
> THE COURT: Okay. Is there anything about this agreement you do not understand?
> THE DEFENDANT: I understood everything.

P. 14:19-15:4. The Court again asked Molina-Rios if "there [was] anything at this point that you don't understand about the agreement or anything you want to ask your attorney[,]" to which Molina-Rios responded, "No." P. 16:11-14. Molina-Rios then executed the Plea Agreement acknowledging his understanding of it. P. 17:9-18:5. Thus, the Court concludes that Molina-Rios's waiver

of his right to appeal or collaterally attack his sentence was knowing, voluntary, and intelligent. Likewise, in his § 2255 Motion, Molina-Rios does not contend that his waiver of his collateral attack rights was not knowing, voluntary, and intelligent. Accordingly, his § 2255 motion attacking his sentence must be dismissed unless he can make a claim of constitutional infirmity in the plea process, such as ineffective assistance of counsel. See United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) ("Even if the plain language of the plea agreement barred this appeal, we would not enforce such a waiver of appellate rights in this case because the defendant is challenging the constitutionality of the process by which he waived those rights.").

Here, as Ground One of the § 2255 Motion, Molina-Rios asserts that Trial Counsel was ineffective "for not challenging his indictment and sentence based on the statutory interpretation of the substantive criminal § 841(a)(1) and conspiracy [sic] 846." Docket No. 158, p. 4 of 98. According to Molina-Rios, the evidence did not

support the drug quantities charged in the indictment. Id., p. 15 of 98. Molina-Rios also faults Trial Counsel for not having the substance seized by the police independently analyzed to determine its precise nature and weight. Id., p. 17 of 98. As Ground Two, Molina-Rio asserts that Trial Counsel failed to challenge the sufficiency of the evidence supporting the charge of 18 U.S.C.§ 841(a)(1) on the basis that the Government failed to prove the "heightened 'mens rea' requirement . . . in cases involving the Controlled Substance Act and Analogue Enforcement Act." Id., p. 23 of 98 (citing McFadden v. United States, 135 S. Ct. 2298 (2015)). As Ground Three, he claims that Trial Counsel was ineffective for failing to challenge the four-level sentencing enhancement for being a manager or supervisor under U.S.S.G. § 3B1.1(a). Id., p. 30 of 98.

Molina-Rios's statements under oath during the plea proceeding wholly negate any basis for Trial Counsel to make the arguments he urges should have been made. First, Molina-Rios repeatedly confirmed that he knew the amount of drugs involved in the offense and that he knew the

substance in question was heroin:

> THE COURT: Next I'm going to discuss with you what the Government alleges is your involvement in this criminal activity. Tell me if you agree with this. This indicates from in or about March 2014 to on or about June 2015, within the Western District of New York, that you the defendant, Daniel Molina-Rios, did combine, conspire, and agree with [other individuals] to knowingly, intentionally and unlawfully possess with intent to distribute 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance. Do you agree with that?

P. 7:9-19; see also P. 8:21-9:1-6 (restating the above but omitting the names of the co-conspirators); P. 12:4-8 (Q: "[D]o you agree that there was at least 1 kilogram, but less than 3 kilograms of heroin as the amount involved in your relevant conduct as part of this conspiracy?" A: "Yes."). Molina-Rios further agreed that he purchased at least 300 grams of heroin on at least six trips to New York City. P. 9:13-21. He then arranged to distribute the heroin to several street-level drug runners who operated by using a "cell phone of the day" to take calls from customers. P. 10:4-21. The proceeds of these heroin sales were paid to Molina-Rios, which he used to purchase more heroin. Id. As to his role in

the organization, Molina-Rios agreed that he "headed a wide-scale drug trafficking organization where [he] supervised several street level dealers who used a series of cell phones to conduct daily sales with customers seeking to buy heroin or illegally use heroin." P. 9:7-12. Molina-Rios confirmed that he "exercise[d] decision-making authority and have complete authority over certain individuals, five or more of the participants in the conspiracy, including at least ten drug runners who were responsible for coordinating sales for incoming customers[.]" P. 11:5-11.

It is settled law that statements made in a plea allocution "carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). To prevail on a claim that his attorney's representation violated the Sixth Amendment, a defendant must (1) show that counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 693 (1984). Based on Molina-Rios's statements under oath to the Court during

the plea colloquy, the Court finds that he has no colorable basis to assert that Trial Counsel was unreasonable in failing to challenge the type or amount of drugs involved or the sentencing enhancement under U.S.S.G. § 3B1.1(b) based on his role as a manager or supervisor. In other words, Molina-Rios's own admissions fatally undercut the plausibility of any argument Trial Counsel could have made. "The failure to assert untenable claims does not constitute the level of professional deficiency required by Strickland [v. Washington, 466 U.S. 668 (1984)]." Ramirez v. United States, 963 F. Supp. 329, 333-34 (S.D.N.Y. 1997) (citing United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance[.]"); other citation omitted). Accordingly, Molina-Rios has not demonstrated that Trial Counsel was ineffective. See Ramirez, 963 F. Supp. at 333-34 (defense counsel's failure at sentencing to challenge Government's characterization of drugs involved in defendant's offense as crack cocaine was not ineffective assistance, where defendant made repeated,

unambiguous and specific representations to court at his plea allocution that he was involved with trafficking of crack cocaine).

**V. Conclusion**

For the foregoing reasons, the § 2255 Motion is denied. Because Molina-Rios has not made a substantial showing of a denial of a constitutional right, see 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of Court is directed to close No. 1:19-cv-00243-MAT.

**SO ORDERED.**

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: June 19, 2019
Rochester, New York